The first case to be argued today is Michael Cohen versus Donald Trump, 23-35. My understanding, Mr. Dougherty, is that you have reserved no time for rebuttal. And so you will get your 10 minutes. And then we have split argument on the other side. My colleagues are ready. You may proceed. May it please the Court. John Dougherty on behalf of Michael Cohen. This case asks what relief is available when the President of the United States uses the prison system in an attempt to silence his critics. The Supreme Court left no doubt in Edward that a case may present a new Bivens claim in quote, the most unusual circumstances. And where there is no reason to think that Congress is the better source of the remedy than the courts. So certainly, even if a case is unique and unusual, aren't courts instructed to decline extending Bivens or if there's any reason for hesitation to do so? The court has said that if there is any reason to think that Congress is the better source of the remedy, the court should decline to extend a new remedy. However, this is the case in which there is no reason to defer to Congress. It is, first of all, more than most unusual for the President to use the prisons to silence his critics. It's unprecedented. Can you go back to your earlier question about why Congress is not appropriate to fashion this? I mean, you can't be making a conclusory statement for something as big as extending Bivens. Certainly, Your Honor. The courts are the traditional guardians of liberty in this country. It is their institutional role to interpret the rights that citizens have and balance them against the power of government. The Bill of Rights were written to protect against political entities, like the Congress and like the executive. The defense of civil liberties is and always has been the job of the courts. The district court erred when it found that the remedies of the writ of habeas corpus and of injunctive relief foreclosed of Bivens' claim here. The Egbert Court, citing Malesko, stated that the sole purpose of a Bivens remedy is the deterrence, the deterrence of unconstitutional behavior by federal officials. But how does that speak to your case? I mean, being that he filed a petition for a writ of habeas corpus, an injunction was granted, doesn't that suggest that because there's an alternative remedial structure, that that's a reason not to extend Bivens? I mean, you need to explain to me why that doesn't actually undercut your case. Certainly, Your Honor. Egbert speaks in terms of an adequate remedy, an adequate level of deterrence. It recognizes that deterrence is the basis on which we bring and recognize a Bivens claim. Judge Lyman recognized in his decision that habeas and injunctive relief do not offer any deterrence. Without deterrence, there is no reason for a wrongdoer not to commit a similar act in the future. All habeas does is stop an abuse from continuing. All injunctions do is stop an abuse from recurring. But neither of them offer to the wrongdoer a reason not to commit a similar wrong, whether against the same individual or against others. And it's for that reason that a Bivens remedy of damages provides the necessary level of deterrence to ensure that presidents cannot use the prisons as a threat against their critics. Now, the court may find that the Bivens remedy is unavailable here, as all recognize the Supreme Court has declared Bivens remedies a disfavored activity, despite not overruling it, despite recognizing that in the most unusual circumstances, a new Bivens claim may present itself. However, should the court disagree with us and find that Bivens is not available, it should nonetheless find that there must be some remedy beyond habeas and beyond injunctive relief when the executive uses the prisons as retaliation against his critics. So can you tell me the authority for how we would do that? Certainly, Your Honor. Judge Lyman stated it well. He said a proper inquiry would look to whether the framers, in the language they used, the structure of the government they established, the limitations they intended to place on executive power, and the authority they gave to the federal courts, going all the way back to Marbury, whether the founders intended for there to be a remedy. OK, so you think the best case for us finding a brand new remedy would be under Marbury. What is the best case you have for the authority we have to do something like that? So the Second Circuit has recognized, and I'll pull the citation for you in just a moment, has recognized new claims, new rights to sue in non-Bivens contexts when justice so demands. For example, US v. Perma Paving Co. 332 F2D 754, Second Circuit, 1964. There's also US v. Rosa 626 F3D 56, Second Circuit, 2010. And finally, N. Ray Simon 2 litigation, 211 FRD 86, Eastern District, New York, 2002. This is not, we understand that what we're asking the court to do is a significant ask. Find a relief where none has previously been recognized.  not been able to find a relief. And what would the claim, how would you articulate the claim? Certainly, Your Honor, I think the claim is very narrow here. We are talking about an allegation that the president, the attorney general, and others within the Bureau of Prisons and Probation System. I don't gainsay that you have very compelling facts here. So it's not the facts that you need, it's the theory, the claim. I understand, Your Honor. What I was trying to articulate is that's step one. You must have an allegation that a person's liberty interests were infringed upon because of their attempt to exercise their First Amendment right. That's step one. Step two is a judicial order recognizing that those rights were actually infringed. That's what occurred here. Judge Hellerstein, in a very detailed evaluation of the facts, found that there was no other conclusion to be reached other than my client was incarcerated in retaliation, in retaliation for his attempt to speak. That is a necessary element of this claim that we're asking for. The allegation that you're incarcerated, your rights are infringed, your Fourth Amendment right was infringed because of your attempt to speak and a judicial finding that that wasn't the case. How would you articulate this claim generically? Generically, Your Honor, I would say it's a claim for damages against a person. Against the president. In this case, the president. It could have been some other federal official. We have others. Claim for damages against a federal official for what? For violation of the Fourth Amendment right to be free, to not have an unreasonable seizure visited upon you because you chose to speak. Isn't that a Bivens claim? It's not exactly a Bivens claim. Well, let me back up, Your Honor. We believe it is a Bivens claim. That's our first argument. We are that most unusual circumstance. That reservoir, that thin sliver of Bivens that the court has left open says is the most unusual circumstances. Well, what could be more unusual than an allegation that the federal executive used the prisons to silence a critic? And what could be more unusual than a federal judge agreeing that that's what happened? Now, the only question that's left after we've agreed that this is all the most unusual circumstance imaginable is, is there any reason to defer to Congress for the remedy? We submit that it is not. Can I ask, does your argument about seizure depend on us concluding that someone has a right to home confinement? So not necessarily, but it does apply in this case, Your Honor. In this case, Mr. Cohen had been approved for home confinement. That's a significant fact. He wasn't submitting an application for home confinement that was denied. He had already been approved. So your argument is that it was the taking away that was the seizure, right? If in the first instance it had been declined, we would be in a different posture. Is that right? I believe that is right, Your Honor. The case Morrissey v. Brewer, 408 U.S. 471, 1972 begins a line of cases that recognize that people who are incarcerated have a liberty interest in less restrictive forms of incarceration. Once that lesser form of incarceration has been granted, it cannot be taken away absent a legitimate reason and an opportunity to contest. Neither is present here. There was no good reason to take away Mr. Cohen's approval of home confinement. The reason was he wasn't willing to stop talking about the present. And there is no opportunity to contest. Mr. Cohen sat in a probation office for almost two hours waiting to hear what the response would be to his request that the restriction on his speech be lifted. And instead of someone answering him saying, no, you can't have that, you must sign this, et cetera, U.S. marshals came in the room, put him in cuffs, and took him back to Otisville to a solitary confinement cell. So I see that you're over time. But being that you don't have rebuttal, I'm going to ask you to speak for just a moment on your position on presidential immunity. Certainly, Your Honor. And it will be just a moment. Judge Lyman dealt with this, we thought, quite beautifully in his distinction between official acts and acts taken under the color of law. These were acts taken under the color of law. They are not official acts. There is no presidential immunity. Thank you. Thank you, Your Honor. And then Attorney O'Gallagher. You've got five minutes. Please. May it please the court. My name is Alyssa O'Gallagher from the United States Attorney's Office for the Southern District of New York. And I represent the federal defense appellees. In rejecting every single one of the last 12 attempts to expand the Bivens remedy since 1980, the Supreme Court has repeatedly emphasized the separation of powers concerns implicated by the judiciary's creation of a new private cause of action. If the facts approve, what's his remedy? I'm sorry, Your Honor. Could you repeat that? If the facts alleged in the complaint approve, we assume they are now, what's his remedy? Certainly. So in this case, the plaintiff did receive one remedy. He filed an application for writ of habeas corpus. And he ultimately, from a court in this district, received his release from prison. So he had the availability of the habeas writ and did, in fact, succeed in having that writ granted. He also could have availed himself of pursuing injunctive relief. And were he able to meet the standard for injunctive relief, could have also sought an injunction, a different form of an equitable remedy. A third type of remedy that was available to the plaintiff here is the Bureau of Prisons has an administrative remedy process. And what would that have done for him? That would have allowed him, within the context of the Bureau of Prisons, to raise his grievances within the agency and give the agency the opportunity to address those grievances in the first instance. You aren't seriously suggesting that in the context of the facts, in this case, that was a viable remedy, are you? So I think that the Supreme Court has made clear that whether a remedy is available in a particular instance isn't actually the question that. We were born at night, but we weren't born last night. So again, I think the Supreme Court has made clear that the question isn't whether a remedy is available in a particular situation, but whether there is a remedial scheme that evinces an indication to this court that it should be the political branches that should make a determination about whether or not additional remedies should augment a scheme that already exists. But to more directly address Your Honor's question, the federal defendants aren't relying solely on the existence of the administrative remedy program. That's simply one of several remedies that were available at the time to the plaintiff. And as the court has already pointed out this morning, one of those remedies he, in fact, successfully availed himself of. Which of the remedies you've outlined has a deterrent component to it? So I think habeas relief and injunctive relief. Injunctive relief generally does have a deterrent effect. It provides notice to all of those who may be in a similar situation that those actions were found to be unlawful. Right, but where's the deterrence in that? The notice after the fact, you're not going to get away with it, is not actually precluding somebody from doing something in advance. So if you could speak to that, please. So I think it's important to take a step back and look at the Supreme Court's decision in Egbert. It discussed the concept of deterrence. And what it discussed there is that it's actually a question for Congress and the executive to determine whether or not a remedy affords adequate deterrence. OK, but now that's walking away. So your position is not that either of those two remedies that you suggested provide deterrence, but Congress is the one that gets to do it. Is that what you're arguing today? No, I do think that. Because the question I asked was which of those two remedies provide, or the question my colleague asked was which of those two remedies provides deterrence. So I do think that both of those remedies provide deterrence. This court has recognized that forms of injunctive relief have incidental deterrent effects. But again, as the Supreme Court stated in Egbert, the question of whether a remedy is adequate to begin with is a question for the legislative branch. And the question as to whether a remedy affords adequate deterrence is also a question for Congress and the executive. And if Congress and the executive have made it. The defendant here is the executive. Excuse me? The defendant here is the executive. The allegation is that the wrong was perpetrated by the executive. So your suggestion that you've got to confer with the executive in a case like this to fashion an adequate remedy, I may be missing something, but it doesn't make any sense to me. So the court in Egbert stated that it's a question for both Congress or the executive. So in this instance, it's a question for Congress fundamentally whether or not a damages remedy should be implied here for the conduct alleged. Congress, the implication of a damages remedy is fundamentally a legislative endeavor. It requires the weighing of policy considerations, the effects that implying such remedy would have on the individual defendants, on the government, on the operation of the government. And those questions are questions that Congress, the legislative branch, is better situated to consider than courts. So you started off by reminding us that extending Bivens is unusual. But your colleague on the other side has conceded that. So what would help me is to hear you explain to me why this case isn't unusual enough to extend Bivens. We're already all on the same page that it's rare. It's disfavored. We shouldn't just willy-nilly go out there. Why is this not the case to do it? Thank you, Your Honor. So my colleague is referring to one line in the introductory paragraph in the Egbert decision and is attempting to sort of take from that one line, either graft onto the- All language in Supreme Court decisions is important to us. Understood, Your Honor. I think regardless of whether a case, regardless of the circumstances that a case presents, the Supreme Court has instructed that courts run through the same Bivens analysis. And courts are instructed to consider whether the context is a new context such that it's meaningfully different from the three Bivens cases the court has approved a Bivens remedy and whether there are special factors counseling hesitation in the absence of affirmative action from Congress. And so I think that the unusual circumstances line from Egbert nearly indicates that in almost every circumstance, when you run through that test, where the court will wind up is that a Bivens remedy should not be implied. And it's the federal defendant's position that when you run through the very strict two-part test that the Supreme Court has set out, that it leads this court necessarily to the conclusion that a Bivens remedy should not be implied here. And the Supreme Court has, on several other occasions, had the opportunity to consider facts that may shock the conscience or sound egregious. Maybe you want to just give me a case. Sorry? The allegations here that the President of the United States wanted to stop this man from writing a book and interfered with his conditions of release. I don't have a case, though. Maybe you can help me. What cases do you think would be comparable? Your Honor, I don't have a specific case that's on all fours with this case. Not all fours, but just in terms of the seriousness of the allegations, the nature of the players, and so forth. What comes to the top of your list? I think in several of the Supreme Court's recent Bivens cases, in the Abbasi case, in the Hernandez case, the allegations were serious and shocking. The conditions that detainees were allegedly subjected to, the cross-border shooting of a Mexican national who, in that instance, the court found there was no Bivens remedy. The 15-year-old. Yes. And I think courts, in addition to the Supreme Court, in 2014, the DC Circuit found that the existence of grievous wrongs does not free the judiciary to authorize any and all suits that may seem just. The question is not whether it's just to imply a damages remedy here, but whether the Supreme Court's precedent, most recently Egbert Hernandez Abbasi, authorizes this court, rather than Congress, to imply that remedy. I just want to switch gears for one second. So pretrial services was created by Congress, but delegated authority to the administrative office of the US courts, is that correct? Yes, Your Honor. So is there still a separation of powers issue with respect to pretrial services? Yes, I think that the separation of powers issues pertains. Even though it's under the authority of the courts? Yes, because the separation of powers issue is implicated in the weighing of policy considerations that factor into the implication of a damages remedy. And I think the weighing of those policy implications is the same, regardless of which branch of government is involved in the alleged violations. OK, thank you so much. Thank you. Thank you very much. Good morning. I have to apologize. I have a cold. So if I start hacking, don't count it against me. I do not have COVID. The district court correctly dismissed, and first and foremost, Alina Habe, I represent President Trump. May it please the court. The district court correctly dismissed the case against my client, President Trump. It properly held the appellant's sole cause of action, a bivviness claim, is foreclosed by Supreme Court precedent and fails as a matter of law. For this reason alone, the court must affirm the district court's ruling. And even in the unlikely scenario that this court were to find the appellant has stated a viable cause of action under bivviness, his claim against President Trump would still be barred by presidential immunity doctrine. What would deter a president from engaging in behavior like this if we don't use bivviness? Well, I think that that's not actually part, and the Supreme Court has spoken to this in Nixon v. Fitzgerald. I believe you asked my counsel here for the DOJ for a case that's similarly on point. That was addressed there, where Nixon had actually been recorded with malintent. And they've stated that the intent of does not, there's no intent that goes into a bivviness analysis here. And this is a bivviness claim. And unfortunately for Mr. Cohen, on the face of this complaint. So you're basically conceding that there's no deterrence available? I think there was a deterrent. There's nothing to deter? No, I agree with what counsel said. I think the deterrent was the injunctive relief that he got via habeas corpus. He got out. That was filed. The judge wrote an order. Why is that deterring behavior like this again? How did that? I think that generally speaking, when a judge puts an order in saying that behavior was unwarranted in their opinion, I think that's a deterrent, at least to me. I respect the rule of enough to be deterred by something like that. But I think we're forgetting the biggest issue, which she mentioned, which is separation of powers. This is why this exists. This is why bivviness claims are so hard to expand. Justice Gorsuch even said, effectively, bivviness should be abolished. Because it creates a problem where we have any branch in government, not just the executive branch, and we are not to intertwine the two. The allegation, and again, we are at this point where we need to take the allegations, was that someone pulled strings to retaliate against someone related to a personal vendetta. How does that fall within a president's official capacity as an officeholder? First of all, I have to say, before I answer that, and I will answer that, Your Honor, the complaint itself does not have facts that President Trump did it. It's an allegation based on Mr. Cohen's interpretation of what happened in the department when he was trying to get out on release. There's absolutely no facts, unlike Nixon, where there was actually a recording. In this case, he has absolutely no facts. It's a Michael Cohen assumption. So you're saying it's too conclusory for us to credit? Absolutely. In the four corners of this complaint, absolutely, Your Honor. I don't know if I answered your question directly, but I can say that in this case, if you look at the facts of it, even if Bivens tells, he has absolute immunity, and that is incredibly important. OK. Are you familiar with Blasingame versus Trump, the DC Circuit case that was recent? Let me see if it's in my, not off the top of my head, Your Honor. OK. I'd just be, they got this issue before we did. And obviously, it is not finding authority on us, but it is persuasive. And I was hoping that you could react to it, but you don't have any reaction to it at this time. I don't, but I can say that if it's not from the Supreme Court, and the Supreme Court has made very clear that we are not to extend Bivens unless it causes the two-factor test, my colleague will. Right, that's an official act case. It's more dealing with the immunity. OK, but if you're not prepared. I'm happy to talk about the immunity in official acts. Actually, Mr. Cohen's complaint states on paragraph 47 that, at all relevant times herein, the individual defendants acted within the course and scope of their employment and under the color of law. So right there, never mind Bivens, the president, he admits that the president was working within his job as the president of the United States, and his complaint fails under absolute immunity. So under two, frankly, it fails on two levels. I can speak generally of Nixon. The case serves as an independent basis of dismissing a Pons case against President Trump. As I stated, a former president of the United States is entitled to absolute immunity from damages liability predicated on his official acts. That was stated in the Nixon v. Fitzgerald case. But that is precisely what Appellant is attempting to do. The complaint specifically alleges, as I said, that he was working within the course and scope of his employment. So for those reasons alone, it must be dismissed under Nixon. And then Appellant also tried to skirt this issue by claiming that President Trump's alleged conduct was done in bad faith. I mentioned this prior. But my client adamantly, first of all, denies that he had any involvement whatsoever in the conduct alleged in the complaint. And there is no specific facts that go to President Trump. Let's remember there were seven counts. One was against President Trump, and it had no factual basis. But regardless, yeah. And so I think I thank you for your time. Yeah, sure. My colleagues don't have it. Sure. OK. Thank you. We will take it under advisement. And again, we ask the next group of oralists to move on up.